## Kuyalowicz v. Schuylkill Gas and Electric Company.

*Corporations—Merger—Misnomer of defendant corporation—Statute of limitations—Amendment of record—Act of May 4, 1852.*

The plaintiff's son was electrocuted while employed by the S. Gas and Electric Co., Nov. 15, 1919. Suit was begun Nov. 10, 1920, but on June 3, 1920, that company was merged with others into the Pennsylvania Power and Light Co. On petition to quash the writ and petition of plaintiffs to amend the record so as to correct the misnomer: *Held*, (1) that there was no statutory requirement that the merger agreement and the letters-patent issued therefor must be recorded in each county where the respective constituent companies theretofore operated; (2) a certified copy of the agreement of merger was competent evidence thereof under the Acts of March 31, 1823, 8 Sm. Laws, 144, and of May 3, 1909, P. L. 408; (3) the Act of April 29, 1915, P. L. 205, continues unimpaired all rights of creditors and all liens against the property of the constituent companies in cases of merger; (4) the defence of misnomer might properly be set up by a rule to quash the writ; (5) under the Act of May 4, 1852, P. L. 574, a misnomer of the defendant corporation, whose officer had been properly served with the writ, might be amended by the court so as to correct the mistake in the name of the defendant, even after the statute of limitations had run.

Rule to quash writ and petition to amend præcipe, etc. C. P. Schuylkill Co., Jan. T., 1921, No. 36.

*Z. F. Rynkiewicz* and *A. D. Knittle*, for plaintiff.

*M. M. Burke* and *Thomas J. Perkins*, for defendant.

KOCH, J., July 25, 1921.—The petition of the defendant, as a basis for quashing the writ in this case, assigns four reasons, to wit:

1. The above-named defendant was not at the commencement of this suit, and is not now, located or doing business in the Borough of Shenandoah, Schuylkill County, Pa.

2. There was not in existence at the commencement of this suit, and is not now in existence, any such corporation as that named in the writ as defendant, namely, "The Schuylkill Gas and Electric Company."

3. The return of service by the sheriff of summons issued in this suit, as follows, "Served the within writ on the Schuylkill Gas and Electric Company, a corporation, at its office in the Borough of Shenandoah, by handing a true and attested copy of said writ to P. A. McCarron, Superintendent of said Schuylkill Gas and Electric Company, and then in charge of said office, and making known to him the contents thereof personally on Nov. 23, 1920. It having first been ascertained upon inquiry that none of the executive officers of said company reside in Schuylkill County," is not in truth and fact correct, in this, that the said the Schuylkill Gas and Electric Company was not at the time of the commencement of said suit, or at the time said service was made, in existence, and that the said P. A. McCarron, named in said return as served, was not then superintendent of the said the Schuylkill Gas and Electric Company, the defendant above named.

4. At the time of the commencement of said suit, and at the time of said service, above-named defendant was not in law or in fact in existence, in that it had some time prior thereto, to wit, on June 4, 1920, been merged with The Lehigh Valley Light and Power Company, Northern Central Gas Company, Columbia and Montour Electric Company, Northumberland County Gas and Electric Company, The Harwood Electric Company, Pennsylvania Power and Light Company and Pennsylvania Lighting Company to form Pennsylvania Power and Light Company, as appears by joint agreement of consolidation and merger between the aforesaid companies creating the said Pennsylvania Power and Light Company dated April 12, 1920, filed in the office of the Secretary of the Commonwealth on June 2, 1920, and letters-patent duly issued thereon by the Governor under date of June 4, 1920.

The said P. A. McCarron made affidavit to said petition, and therein states: "That for some time, and up to its merger on June 3, 1920, he was superintendent of the Schuylkill Gas and Electric Company," etc.

In answer to the rule, Joseph Kuyalowicz denies the averments in the first paragraph above quoted, and avers: "That the Schuylkill Gas and Electric Company is a corporation doing business in the Borough of Shenandoah," etc. He denies the averments set out in the second paragraph of the petition and avers: "That the Schuylkill Gas and Electric Company's charter is on file in the office of the Recorder of Schuylkill County, and under the law had corporate existence the day that suit was commenced." He denies the facts set forth in petitioner's third paragraph, and avers: "That the said P. A. McCarron, named in the sheriff's return, was, at the time of the injury inflicted forming the basis of the named suit, the superintendant of the Schuylkill Gas and Electric Company." He further denies the averments in petitioner's fourth paragraph, and says: "That the charter of the Pennsylvania Heat and Light Company was not recorded in the office of the Recorder of Deeds in and for Schuylkill County. That the plaintiff has no knowledge that the Schuylkill Gas and Electric Company had consolidated or merged with any one or more companies to form the Pennsylvania Heat and Light Company. That if such consolidation was in fact intended, the plaintiffs had no knowledge of the same, because on the date of entry of suit as above, and up to and including

1 D. & C.

the 14th day of January, 1921, no charter of the Pennsylvania Heat and Light Company was recorded in the office of the Recorder of Deeds of Schuylkill County."

For further answer to the petition, Kuyalowicz says:

"1. That upon the date of the negligent act which forms the basis of the said suit, the Schuylkill Gas and Electric Company was in existence, and that thereupon the right of action accrued against it, and that the law regulating the formation and control of corporations provides that it shall continue its legal existence for the purpose of preserving the right of action or debt.

"2. That no act of incorporation or consolidation or merger of corporations under the law is completed until the charter has been recorded in the office of the county wherein it is sought to transact the principal business.

"3. The petitioner's motion and rule to quash is defective and not in accordance with the Practice Act, 1915.

"4. The non-existence of the defendant is not a reason to quash, and is a matter of substantive defence."

Testimony was taken in open court on the part of both sides in support of and against the said rule. At the beginning thereof the defendant offered the writ to show the return of service thereto, and the plaintiff objected on the ground that the defendant has proceeded in an improper way to attack the service of the writ, saying "that the Act of 1915 has abolished all pleas in abatement and all such matters, such as this, intended to attack the writ must be raised in an affidavit of defence raising principles of law."

Before discussing the law of this rule, we will state the facts developed by the testimony. The endorsement of the service on the writ is as follows: "Served the within writ on the Schuylkill Gas and Electric Company, a corporation of Shenandoah, Pa., at its office in the Borough of Shenandoah, Schuylkill County, Pa., by handing a true and attested copy of said writ to P. A. McCarron, District Manager of said Schuylkill Gas and Electric Company, and then in charge of said office, and making known to him the contents thereof personally on Nov. 23, 1920. It having been ascertained upon inquiry that none of the executive officers of said company reside in Schuylkill County. So answers. Joseph Wyatt, Sheriff."

P. A. McCarron testified that when the writ was served on him he was not in the employ of the Schuylkill Gas and Electric Company, and that the said company then had no office in Shenandoah or anywhere else to his knowledge; also that he was at that time in the employ of Pennsylvania Power and Light Company, and that he was served with the writ in its offices in Shenandoah. He testified, on cross-examination, that the Schuylkill Gas and Electric Company was in existence in November, 1919 (the time of the accident), and that he was then its district manager, with his office in the Borough of Shenandoah; that his duties in the merged company are somewhat enlarged, and that the bills are sent out in the name of Pennsylvania Power and Light Company. The assistant secretary of the Pennsylvania Power and Light Company testified that the company's main office is in Allentown, Pa., and that the Schuylkill Gas and Electric Company, the defendant in this case, was one of the merging companies making up the Pennsylvania Power and Light Company. The copy of agreement of merger and consolidation by and between the several companies forming "The Pennsylvania Power and Light Company," certified by the Secretary of the Commonwealth, and also the letters-patent of the Pennsylvania Power and Light Company, were received in support of the rule, but against the plaintiff's objection, on the ground that

the originals were not recorded in Schuylkill County, and that a certified copy cannot be received in evidence. Plaintiff proved that neither the agreement of merger and consolidation nor the letters-patent are recorded in Schuylkill County.

The agreement of consolidation and merger is dated April 12, 1920, the letters-patent are dated June 4, 1920, whereas the writ was issued in this case on Nov. 10, 1920, and service made on Nov. 23, 1920.

The certified copy of the agreement of merger and consolidation is admissible and made competent as evidence by the provisions of the Act of March 31, 1823, 8 Sm. Laws, 144, and by the 4th section of the Act of May 3, 1909, P. L. 408. Nor do I find anything in the statutory law of this State which requires that a joint agreement of consolidation and merger of two or more merging companies and the letters-patent which issue therefor must be recorded in each county where the respective constituent companies theretofore chiefly carried on their respective operations. By the provisions of the General Corporation Act of April 29, 1874, P. L. 73, each corporation thereinunder incorporated by the Governor of the Commonwealth is required to record its "original certificate with all its endorsements, . . . in the office for the recording of deeds in and for the county where the chief operations are to be carried on, and from thenceforth the subscribers thereto, and their associates and successors, shall be a corporation for the purposes and upon the terms named in said charter." But when corporations of the second class have been created in accordance with law and then become merged by virtue of the provisions of an act entitled "An act authorizing the merger and consolidation of certain corporations," approved May 3, 1909, P. L. 408, and its supplements, the certificate of agreement of the merging corporations and the letters-patent for the merged companies are not required to be recorded in the respective counties where each of the several merging corporations chiefly carried on its business theretofore. In the 3rd section of the said Act of 1909, as amended on April 29, 1915, P. L. 205, 206, it is provided that: "Upon the filing of said certificates and agreement, or copy of agreement, in the office of the Secretary of the Commonwealth, and upon the issuing of new letters-patent thereon by the Governor, the said merger shall be deemed to have taken place, and the said corporations to be one corporation under the name adopted in and by said agreement, possessing all the rights, privileges and franchises theretofore vested in each of them, and all the estate and property, real and personal, and rights of action of each of said corporations shall be deemed and taken to be transferred to and vested in said new corporation without any further act or deed." Since no further act or deed is necessary, recording of the agreement of consolidation and the letters-patent is not required.

It being evident that a misnomer exists in this case, the defendant's remedy at common law would have been by a plea in abatement, but now, since pleas in abatement are abolished by the "Practice Act, 1915," P. L. 483, such defence must be made in an affidavit of defence. However, defence in that manner is not necessarily exclusive. Rules in Pennsylvania have become of enlarged operation and have been allowed where at common law a plea in abatement would have been the only remedy. In Parke Bros. & Co. v. Oil City Boiler Works, 204 Pa. 453, 457, the Supreme Court, in speaking of rules, said that: ". . . the constant tendency of modern practice has been to enlarge rather than to restrict their operation." Again: "The practice of setting aside service on rule has the sanction of precedents sufficient to save it from being pronounced irregular in cases where it reaches the desired end without inconvenience or injustice to either party. See Parke v. Common-

1 D. & C.

wealth Ins. Co., 44 Pa. 422; Hagerman v. Empire Slate Co., 97 Pa. 534; Hawn v. Penna. Canal Co., 154 Pa. 455; Fulton v. Commercial Travelers Accident Ass'n, 172 Pa. 117; Bailey v. Williamsport, etc., R. R. Co., 174 Pa. 114; Platt v. Belsena Coal Mining Co., 191 Pa. 215, and Jensen v. Phila. & S. Ry. Co., 201 Pa. 603." Therefore, we conclude that the defendant has not mistaken its remedy here.

That the Schuylkill Gas and Electric Company became merged with other corporations to form the Pennsylvania Power and Light Company on April 12, 1920, for which letters-patent were issued on June 4, 1920, is beyond question. Such merger, ipso facto, dissolved the Schuylkill Gas and Electric Company and made it non-existent. Therefore, it became no longer suable after June 4, 1920, and the issuance of the writ in this case on Nov. 10, 1920, was improper, because there was no one who could be served with the writ: Dalmas v. Philipsburg & S. Val. R. R. Co., 254 Pa. 9. But the plaintiffs were not without ample remedy after the merger, because merger acts always provide for such contingencies. In this case the Act approved April 29, 1915, P. L. 205, which is amendatory of an act entitled "An act authorizing the merger and consolidation of certain corporations," approved May 3, 1909, P. L. 408, applies. It, inter alia, provides that in cases of merger, ". . . all rights of creditors and all liens upon the property of each of said corporations shall continue unimpaired, limited in lien to the property affected by such liens at the time of the creation of the same, and the respective constituent corporations may be deemed to be in existence to preserve the same, and all debts not of record, duties and liabilities of each of said constituent corporations shall thenceforth attach to the said new corporation and may be enforced against it to the same extent and by the same process as if said debts, duties and liabilities had been contracted by it." What we have thus far said indicates that the rule should be made absolute and the writ quashed.

But, since the hearing and argument upon the rule to quash, the plaintiffs have filed a petition asking us "to amend the præcipe, the summons, the writ and all other parts of the record . . . by adding thereto the name of the Pennsylvania Power and Light Company, a corporation, and, if necessary, to order new service of the said subpoena and writ and the issuance of an alias writ and service thereon." When the petition was presented in open court, counsel, who appear de bene esse in this case, made objection thereto and argument was immediately heard on the part of both sides. The plaintiffs have not yet filed a statement of their claim, but from their petition for amendment we learn that they sue as the surviving and dependent parents of Andrew Kuyalowicz, deceased, who was electrocuted when working for the Schuylkill Gas and Electric Company on or about Nov. 15, 1919. The petition further sets forth that this action was begun within a year from the date of Andrew's death. We quote from the petition the following as explanatory of the reason for bringing this action against the Schuylkill Gas and Electric Company, to wit:

"That at the time of commencement of said action the plaintiffs, as a matter of fact and law, mistakenly believed that the Schuylkill Gas and Electric Company was in existence, such belief being founded upon the following facts:

"a. The defendant and his attorneys negotiated with an agent for the settlement of the claim for damages arising from the negligence of the defendant, said agent in all negotiations never disclosing to the plaintiffs or their attorney that the Schuylkill Gas and Electric Company had gone out of existence.

"b. The merger of the Schuylkill Gas and Electric Company was not recorded in the office of the Recorder of Deeds of Schuylkill County.

"*c.* The office of the Schuylkill Gas and Electric Company at the date of the injury was identically the same as that of the merged company at the time of bringing suit.

"*d.* The officers in charge of the Schuylkill Gas and Electric Company at the date of the injury occupied the same office at the date of bringing suit.

"*e.* The name of the Schuylkill Gas and Electric Company was the name entered in the directory of the Bell Telephone Company and the United Telephone and Telegraph Company at the date of bringing suit, and all telephone calls were made in that name."

In the petition "the plaintiffs further allege that they have no knowledge, either actual or constructive, that the Schuylkill Gas and Electric Company had lost its existence by merger with any other companies." The sixth paragraph of the petition is as follows: "That the writ issued in the above stated case to No. 36, January Term, 1921, was served upon P. A. McCarron, who, at the time of the death of Andrew Kuyalowicz, was the district manager of the Schuylkill Gas and Electric Company, and at the time of the service of said writ occupied the same office and still had charge of the operation of the plant formerly held by the Schuylkill Gas and Electric Company."

It is apparent that if the writ in this case be quashed, the plaintiffs will be barred from suit by the statute of limitations. The 7th section of the Act of April 25, 1850, P. L. 569, provides: "That the provisions of an Act passed March 27, 1713, entitled 'An act for the limitation of actions,' shall not hereafter extend to any suit against any corporation or body politic which may have suspended business, or made any transfer or assignment in trust for creditors, or who may have at the time and after the accruing of the cause of action in any manner ceased from or suspended the ordinary business for which said corporation was created." But it is now of no avail: Gallagher *v.* Silver Brook Coal Co., 10 Schuyl. Legal Rec. 247. Now, as the right of action in these plaintiffs is barred by the statute of limitations, may they be allowed to amend the record in the manner prayed for? The 2nd section of the Act of May 4, 1852, P. L. 574, provides that: "All actions pending or hereafter to be brought in the several courts of this Commonwealth, and in all cases of judgments entered by confession, the said court shall have power in any stage of the proceedings to permit amendments by changing or adding the name or names of any party, defendant or plaintiff, whenever it shall appear to them that a mistake or omission has been made in the name or names of any such party." It must be clear now from what proceeds in this case that a "mistake . . . has been made in the name" of the real defendant in this case. In the case of Heidelberg School District *v.* Horst, 62 Pa. 301, Horst sued the said school district to recover $800 which he had lent to it in 1865 to pay bounties to persons volunteering in the military and naval service of the United States. An act entitled "An act relating to the payment of bounties for volunteers in the County of Lebanon," approved Aug. 24, 1864, P. L. 1001, legalized, made valid and binding upon the respective boroughs and townships in Lebanon County "all bonds, warrants or certificates of indebtedness issued or to be issued by the corporate authorities of any borough, or by the school directors, supervisors or board of election officers of any township, . . . for the payment of bounties to persons volunteering in the military or naval service of the United States." It will be noted that whilst the school district could create the debt, the debt became binding, not upon the school district, but upon the township, and that as the liability was thus fastened on the township, it became necessary for Horst to sue the Township of Heidelberg instead of the school district. The defendant, therefore, made a point of this

1 D. & C.

fact in its requests for the court's instructions in its charge to the jury. The *narr* had two counts; the first count was based on the bond which had been signed by all the school directors, and the second count was based on money lent to the school district. In charging the jury, Pearson, P. J., *inter alia*, said: "The plaintiff would be entitled to recover on the second count of the *narr*, and the record can be so amended as to make the action against Heidelberg Township instead of the school directors thereof. It is an amendment of mere form and will be permitted by the court, and the record may be treated as amended." In affirming the judgment of the court below, the Supreme Court, per Agnew, J., *inter alia*, said: "This is an attempt to impale an honest debt on the sharp points of the law, which ought not to succeed, and we think the corrective power of the court is sufficient to prevent it. The President Judge of the court below struck at the root of the chief objection when he said he would treat the action as amended and as now in the name of the Township of Heidelberg. He had abundant evidence before him to justify the amendment, and ample authority also to be found in the following cases: Barnet v. School Directors, 6 W. & S. 46; Prescott v. Burgess, etc., of Duquesne, 48 Pa. 118; Robertson & Co. v. Reed, 47 Pa. 115; Barnhill v. Haigh, 53 Pa. 165. If not entered on the record, and if necessary, the amendment can yet be made."

After the writer had read the case just referred to in the course of an examination of the rule now pending, he withheld disposing of the rule and asked counsel on both sides, in view of the last cited decision, to argue the question of this court's duty under the circumstances of this case—whether or not we should first amend the record so as to correct the plaintiff's mistake and then dispose of the rule. Argument was had pursuant to the suggestion, but before the argument began the plaintiff's counsel presented the plaintiff's petition to amend. The defendant's counsel had previously received a copy of the petition and were prepared to argue against it, filing with their argument a well prepared lengthy brief. We will, therefore, proceed further to consider the plaintiffs' petition at this time.

I will state the case of Wright v. Eureka Tempered Copper Co., 206 Pa. 274, in the language of the Supreme Court, to wit: "The Eureka Tempered Copper Company is a corporation that was engaged for a number of years in business in North East, Erie County. Its property was sold by the sheriff in 1896, and since then it has not done any business, but still exists as a corporation. In December, 1896, the Eureka Tempered Copper Works was chartered, and this corporation succeeded to the business of the copper company. In 1899, the plaintiff, while in the employ of the copper works, was injured, and in 1901, three days before his right of action was barred by the statute of limitations, he brought this suit to recover damages. Through a mistake of counsel, the defendant named in the writ was the copper company instead of the copper works. The service of the writ was made on the manager of the latter corporation, but the sheriff, following the words of the writ, returned it as served on the manager of the copper company. The error in the name was not discovered by the plaintiff until a few days after the statute of limitations had barred a new action. The plaintiff then obtained a rule to show cause why the record should not be amended by striking out the word 'company' and inserting the word 'works,' and on the same day the sheriff petitioned for leave to amend his return so as to show service on the manager of the copper works." The court below discharged the rule to amend and dismissed the sheriff's petition. Therefore, an appeal was taken and the judgment of the court below reversed with a *procedendo.* The Supreme Court said: "Statutes

of amendment are liberally construed to give effect to their clearly defined intent to prevent a defeat of justice through a mere mistake as to parties or the form of action. Amendments, however, will not be allowed to the prejudice of the other party, where the statute of limitations has run, by introducing a new cause of action or bringing in a new party or changing the capacity in which he is sued: Trego v. Lewis, 58 Pa. 463; Com. ex rel. v. Dillon, 81* Pa. 41; Grier v. Northern Assurance Co., 183 Pa. 334; Peterson v. Delaware River Ferry Co., 190 Pa. 364; Garmon v. Glass, 197 Pa. 101. A party whose name it is asked to amend must be in court. If the effect of the amendment will be to correct the name under which the right party was sued, it should be allowed; if its effect will be to bring a new party on the record, it should be refused after the running of the statute of limitations." The Supreme Court filed its opinion May 18, 1903. Therefore, by its action, the plaintiff was permitted to amend more than one year after the statute of limitations barred the action. As in that case, so in this, there can be no doubt that the plaintiffs intended to bring suit against the right party, but they made a mistake in naming the right party, and that was a mistake both of law and of fact. A court has the power to correct a mistake either of law or fact: Druckenmiller v. Young, 27 Pa. 97; Cochran v. Arnold, 58 Pa. 399; Pennsylvania R. R. Co. v. Keller, 67 Pa. 300; Leonard v. Parker, 72 Pa. 236; Heslop v. Heslop, 82 Pa. 537; Holmes v. Pennsylvania R. R. Co., 220 Pa. 189, 192. In this case the right party was served, to wit, P. J. McCarron, the manager of the Pennsylvania Power and Light Company, at the company's place of business. We can here say, as the Supreme Court said in the copper company case: The mistake in bringing the suit was in the name of the party actually summoned and not in suing the wrong party, because there was no party by the name of Schuylkill Gas and Electric Company in existence. That company died upon its merger with other corporations, and it became impossible to sue it. By making service on McCarron, the right defendant was brought into court under the wrong name. Therefore, the party whose name it is asked to amend is in court, and, as the mistake is clear, the amendment should be allowed and the rule to quash the writ discharged. The plaintiffs and their counsel intended to sue the party who is liable to the plaintiff, and that party is now, and was at the time of suing, the Pennsylvania Power and Light Company. I think the power and light company is privy to the gas and electric company, for the former clearly succeeds the latter and stands in its stead, so far as the liabilities of the latter are concerned. It has become sponsor for the gas and electric company as to all its obligations and liabilities, both by virtue of the agreement of merger and by virtue of the statutory law of this State. Therefore, I think the effect of the amendment in this case is to correct the name under which the right party was sued. It is true that the power and light company is a new corporation, but it must not be overlooked that this new corporation is bound by the agreement under which it became formed, and that, by virtue thereof, it stands in the place of and for all its several constituent parts.

In McGinnis v. Valvoline Oil Works, 251 Pa. 407, the plaintiff was injured on March 19, 1911, and brought suit to recover damages from his employer, naming it as "The Valvoline Oil Works, Limited, a corporation." More than three and one-half years afterwards the plaintiff learned that the defendant was a partnership association and not a corporation, and moved for leave to amend by striking from its name the words "a corporation" and adding in their stead the words "a partnership association." The court below refused the amendment. Service of the writ had been accepted by the attorneys for

1 D. & C.

Kuyalowicz v. Schuylkill Gas and Electric Company.

"The Valvoline Oil Works, Limited," for whom the plaintiff worked and in whose services he was injured, and at that time said attorneys also represented a corporation named "The Valvoline Oil Company," with whom the plaintiff had no connection. The Supreme Court, on Jan. 6, 1916, reversed the court below and allowed the amendment to be made, notwithstanding the statute of limitations had then barred the right of action by nearly three years, because service had been made upon the right party, but under the wrong name.

And now, July 25, 1921, the rule to quash is discharged and the plaintiff is permitted to amend by naming the defendant as "Pennsylvania Power and Light Company" and by striking from the record the name "The Schuylkill Gas and Electric Company, a corporation of Shenandoah."

From J. O. Ulrich, Tamaqua, Pa.