## Mabon v. Penn Public Service Corporation.

*Bauer & Copeland*, for plaintiffs.

*Gaither, Portser & McConnell* and *Barnhart & Bender*, for defendant.

WHITTEN, J., Sept. 25, 1928.—The above-mentioned actions of trespass were instituted Aug. 26, 1927. In each case the plaintiff alleges, as a cause of action, that on Nov. 16, 1926, the plaintiff, Anita Mabon (a minor child of the other plaintiffs), was seriously injured while she was lawfully on a public highway in Westmoreland County by coming in contact with an electric wire owned, used and controlled by the defendant; and that the proximate cause of the said injury to Anita Mabon was the negligent operation and control of said electric wire on the part of the defendant.

The summons in each case was served Sept. 2, 1927, by the Sheriff of Cambria County—who was deputized for that purpose by the Sheriff of Westmoreland County—upon the defendant's officers at the principal office of the defendant in Cambria County in the manner provided by law.

Pursuant to the provisions of the Act of March 5, 1925, P. L. 23, the defendant obtained a rule to show cause why the writ of summons in each case should not be set aside. The basis of the rule so granted in each case was the following:

(a) That the defendant is a corporation of Pennsylvania, and that its principal office and place of business is at Johnstown, Cambria County.

(b) That none of the officers or directors of the defendant company reside in Westmoreland County.

(c) That it (the defendant) conducts neither a substantial nor a material part of its business in the County of Westmoreland.

The plaintiffs made answer to the above petition and rule, admitting the averments (a) and (b) alleged in the defendant's petition, but denying the averment (c) that the defendant "conducts neither a substantial nor a material part of its business in the County of Westmoreland;" and alleging specific facts to the contrary, and praying that the said rule be dismissed.

By agreement of the parties, a commissioner was appointed, who heard all the proofs offered by the respective parties and reported the same to the court.

Based upon the proofs, the court finds the following facts:

1. That defendant is a corporation organized and existing under the laws of Pennsylvania, having its principal office and place of business in Cambria County. None of its officers or directors reside in Westmoreland County.

2. At the time the alleged cause of action arose, and at the time when service of the summons upon the defendant was made by the sheriff, the defendant company, in the exercise of the powers conferred by its charter, was furnishing electric service (light) to 801 domestic consumers in the Boroughs of

Seward and New Florence and in the Townships of St. Clair, Derry and Fairfield, Westmoreland County. The defendant owned the lines and meters in the private houses of its customers and the lighting equipment on the streets in the Boroughs of New Florence and Seward. The defendant also furnished electricity to the Bolivar Light, Heat and Power Company, which company, in turn, sold it to 500 customers in the Borough of Bolivar, Westmoreland County. The defendant paid a pole tax rental on 160 poles in the Borough of New Florence.

3. The defendant owned and still owns the following real estate in Westmoreland County: (a) A lot in the Borough of New Florence; (b) a tract of land in St. Clair Township, upon which there were and are erected ten houses, which are occupied by employees at the defendant's power-house near the Borough of Seward. The purchase price of this property was about $27,000; (c) one acre of land in Fairfield Township and two rights of way.

4. The gross revenues of the defendant company derived from customers in Westmoreland County during the year 1927 was $138,047.38. The defendant rents a store-room in the Borough of Seward.

5. The defendant also furnishes electric service in the Counties of Somerset, Cambria, Indiana, Clearfield, Centre, Jefferson, Elk, Clarion, Forest, Warren, Crawford and Erie.

6. The gross revenues of the defendant company for the year 1927 were $9,478,706.90.

During that year the defendant furnished electricity to 76,134 customers. Mr. Reiber, defendant's "comptroller," was unable to state the amount of defendant's gross receipts from any county except Westmoreland.

7. The defendant had and still has four regular employees in Westmoreland County, who work in and about its lines in said county and in and about its power-house adjacent thereto.

8. In the exercise of its franchises in Westmoreland County, the defendant owns and maintains about twenty miles of high-tension power lines.

9. The business thus conducted by the defendant in Westmoreland County in the exercise of its franchise was not transient, but was and is habitual and continuous.

10. At the time when the alleged cause of action arose and at the time of the service of the writs of summons in these cases, the defendant, in the exercise of the powers conferred by its charter, was conducting a substantial part of its business in Westmoreland County. There was then located, and still is located, in Westmoreland County a substantial part of the defendant's property, which property the defendant utilized in the conduct of its business there.

In their brief, defendant's learned counsel frankly state the issue before the court as follows: "The writs of summons which the defendant asks to have set aside were issued out of this court and served at the proper office of the defendant in Johnstown on W. A. Reiber, comptroller, the service being made by the Sheriff of Cambria County, in the method provided in such cases by the Act of 1901, that is, by the Sheriff of Westmoreland County deputizing the Sheriff of Cambria County. The defendant does not contend that the service was not properly made in the manner as provided for by the Service Act of 1901, but it does contend that said act does not confer jurisdiction and denies the jurisdiction of this court over the defendant in these cases."

Therefore, the only question is, has the Court of Common Pleas of Westmoreland County jurisdiction over the defendant for the purpose of hearing and determining the rights of the parties in the above stated actions?

In Lobb v. Pennsylvania Cement Co., 285 Pa. 45, the Supreme Court (page 47) expressed the rule thus: "We have many times been called upon to determine whether Pennsylvania corporations, whose principal office and place of business is in one county of the State, may be served with process in any other county. The guiding principle of the decisions is that a domestic corporation may be served in any county where it habitually carries on a substantial part of its business or exercises its franchises and has property."

In Gengenbach v. Willow Grove Park Co., 280 Pa. 278, the Supreme Court (page 281) said: "Suit" against the Pennsylvania corporation "must be brought only where the principal office is located and the service made as directed by the acts referred to, but an exception is upheld where the defendant corporation conducts a substantial part of its business in another jurisdiction, exercising its franchises and locating there the whole or part of its property."

In Bailey v. Williamsport and North Branch R. R. Co., 174 Pa. 118, the Supreme Court said: "Here the service was not in the county where any part of the corporate property was situated; it was on an officer temporarily within the territorial limits of the court, where the corporation had neither office nor agent, and where, so far as the proofs show, it transacted no business. We hold that the proper construction from all the legislation on the subject compels the plaintiff to bring her action in this form and for this cause in a county where the corporate property is in whole or in part situated."

In Park Brothers & Co., Ltd., v. Oil City Boiler Works, 204 Pa. 453, the Supreme Court (page 456) said: "At common law a corporation could only be sued in a territorial jurisdiction where it had its legal domicile, and that was where it had its chief place of business. . . . It is . . . firmly settled . . . that the common-law rule as to suits against corporations is still the general rule in Pennsylvania, and any exceptions to it must rest on clear statutory authority. . . . No suit is authorized against a corporation except in a county where the corporate property is in whole or in part situated, or where it transacts a substantial part of its business."

In De Haas v. Pennsylvania R. R. Co., 261 Pa. 499, the Supreme Court (page 501) said: "At common law a corporation could only be sued in the territorial jurisdiction where it had its legal domicile, that is, where it had its chief place of business: Park Brothers & Co., Ltd., v. Oil City Boiler Works, 204 Pa. 453. This was enlarged by the Act of June 13, 1836, § 42, P. L. 568, so as to authorize suit against a corporation in any county where the cause of action arose. The Act of March 21, 1842, § 8, P. L. 145, provides, inter alia, that 'when any action is commenced by any person or persons or by a corporation against an incorporated railroad or canal company in any county in which the corporate property of such company is wholly or in part situated it shall be lawful, etc.,' directing the manner of service of process in such cases. The Act of March 17, 1856, P. L. 388, contains a like proviso as to commencing suits against corporations in general. . . . A corporation of this State exists in any county where it has property and exercises its corporate franchise, and, being lawfully served, must respond to any transitory action brought there against it. A corporation is an artificial person and there is no reason in principle why it should enjoy an immunity from suit not given to natural persons under like circumstances. . . . It is fair to assume that the Acts of 1842 and 1856 were intended to serve some purpose, but it is difficult to discover what, unless they extend the jurisdiction of the courts to counties where corporate property is situated."

We have found no case where the Supreme Court has applied the law to the exact state of facts which the instant cases present. Therefore, we have quoted at length from these decisions, in kindred cases, for the purpose of clarifying the principles of law which are applicable here.

The numerous decisions of our highest court compel the conclusion that a Pennsylvania corporation may be sued in any county where, in the exercise of its franchises, it conducts a substantial part of its business, and where a part of its property is located—which property was used and is used in the conduct of its business there, and especially where, as here, suit is brought in a county where the cause of action arose.

As above stated, it is undisputed that the defendant's principal office and place of business is in Cambria County, and that none of its directors or other officers reside in Westmoreland County.

Defendant's learned counsel contend that the Court of Common Pleas of Westmoreland County has no jurisdiction, because, they allege, the defendant does not conduct a substantial part of its business in the County of Westmoreland.

In the instant case, the alleged cause of action arose in Westmoreland County, and the plaintiff's injury was caused by the negligent operation of defendant's property in that county while such property was being used in the exercise of the defendant's franchise.

In Gengenbach v. Willow Grove Park Co., *supra*, the Supreme Court (page 280) said: "At common law, such body could be sued where it had its legal domicile. The Act of June 13, 1836, § 42, P. L. 568, authorized a suit in any county where the cause of action arose, but the jurisdiction was broadened by the Act of 1842 (March 21st, § 8, P. L. 145), which permitted the institution of proceedings when the corporate property was wholly or in part situate in another district, and this power was reaffirmed by the Act of March 17, 1856, P. L. 388."

In De Haas v. Pennsylvania R. R. Co., *supra*, the Supreme Court (page 501) said: "At common law, a corporation could only be sued in the territorial jurisdiction where it had its legal domicile, that is, where it had its chief place of business. . . . This was enlarged by the Act of June 13, 1836, § 42, P. L. 568, so as to authorize suit against a corporation in any county where the cause of action arose. . . . A corporation of this State exists in any county where it has property and exercises its corporate franchises, and, being lawfully served, must respond to any transitory action brought there against it."

The defendant then had and still has considerable real estate and personal property in Westmoreland County, all of which property the defendant used and still uses in the exercise of its corporate powers and duties and in the earning of gross receipts in Westmoreland County amounting to $130,000 annually.

Notwithstanding these matters of fact which are undisputed, defendant's learned counsel argue that the defendant does not conduct a substantial part of its business in Westmoreland County—and that, therefore, this court is without jurisdiction in the premises.

In Park Bros. & Co., Ltd., v. Oil City Boiler Works, *supra*, the Supreme Court states that suit may be brought in a county (other than the legal domicile of the defendant corporation) "where the corporate property is in whole or in part located, or where it transacts a substantial part of its business."

In Gengenbach v. Willow Grove Park Co., *supra*, it is held (opinion page 281) that suit may be maintained in a county where the defendant conducts a

substantial part of its business, exercising its franchises and locating there the whole or part of its property.

However, in the instant case, the defendant not only transacts a substantial part of its business in Westmoreland County, but also a part of its property is located there, which property is and was used by it in the exercise of its franchise in Westmoreland County.

Defendant's learned counsel also suggests that the phrase "a substantial part of defendant's business" means a large proportion of its business—for example, one-half or one-third of its business. No authority has been cited sustaining this contention and we have discovered none. On the contrary, we hold that an annual gross revenue of $130,000 should be considered a substantial amount.

### Decree.

And now, Sept. 25, 1928, after argument by counsel and upon due consideration, it is ordered, adjudged and decreed that the rule heretofore granted to show cause why the summons in *assumpsit* in the above-entitled cases should not be set aside is discharged; with leave to the defendant to file an affidavit of defense in each case, if it desires so to do, within fifteen days from this date.